May it please the court, Thomas Ogden on behalf of petitioners. I'd like to reserve five minutes of rebuttal and welcome to Los Angeles. It's my first time in this court too, so. Your Honor, this is a case in which our position is the facts aren't in dispute. At the immigration court level, there is an adverse credibility determination against Mr. Pong. We appealed to the Board of Immigration Appeals and they overturned the immigration judge's adverse credibility determination. They found him credible. However, they didn't find he established a past persecution and therefore they did not find that he had a well-founded fear of future persecution. And accordingly, they upheld the immigration judge's holding. Our position, however, on appeal is that, number one, this is de novo. We believe the BIA, Board of Immigration Appeals, did not apply the proper legal standard to the facts and. What is the standard that should have been applied by BIA? We believe that the standard is, number one, de novo and that a well-founded fear of persecution, a future persecution just requires a 10% chance that should Mr. Pong go back to China, he is going to get persecuted. You agree, I gather, that Mr. Pong did not raise past persecution, right, for the IJ or the BIA? Oh, yes, Your Honor. So basically, that's not exhaustive. So you're stuck with proving future persecution, which requires both a subjective and an objective prompt, right? Yes, Your Honor. Okay. And to that point, you know, we would say that, just on the aside, I've never seen a threshold so low as this 10% chance of future persecution. Where do you get this 10% chance, though? This is in INSV Cardozo Fonseca, 480 U.S. 421, 1987, Supreme Court case. But when we're looking at this, we still have the substantial evidence standard of review. So that means we have to be convinced that the evidence compels a finding different than that made by the board, right? No, I don't think that's the ‑‑ I don't think the substantial evidence. Tell me what case convinces you that when we look at this finding by the Board of Appeals, that we look at it de novo? I heard you say that, and that's not consistent with what ‑‑ Oh, no, no, no. I think Your Honor over here was mentioning that the government pointed out we didn't exhaust an administrative remedy regarding past persecution, and if you establish past persecution, it creates a presumption of future persecution. Right. But our overall standard of review in terms of reviewing the board's decision is substantial evidence. I don't believe so. I believe it is de novo in this circumstance because we're seeing that they've applied this standard of a 10% chance of the occurrence. I mean, I agree with what Judge Rawlinson's indicating. We always review these for substantial evidence. There's no de novo review. We determine whether the IJ and later what the BIA relied upon, if there's substantial evidence, to back up the point. Nothing about a 10% rule or anything like that. We analyze whether they have considered it. In this particular case, Mr. Peng lawfully departed China, no interference on the part of the government. They offer no rebuttal to the government's argument that obtaining this credential cuts against his claim. There's no obligation to continue to report to the police when he returns. I mean, frankly, I'm anxious to hear you point out something to the contrary. This is a really lightweight case your client's got here. I'm really hard-pressed to find where there is an objective, hardly any objective evidence, that he has a well-founded fear of future persecution. Help me out. Why am I missing something? Well, Your Honor, in terms of the specific evidence do you point to? The specific evidence I point to is that he has a well-founded fear of future persecution. Is that after he arrived in the United States, he testified to the fact that the Chinese, either the public or the public security bureau, which is the equivalent of the police, continued to call on his home, asking where is he. You know, this guy was. That's not persecution. That's not persecution. Well, if he's trying to establish his fear of going back. It has to be both subjective and objective. You know, persecution is just not an inconvenience. It's not even discrimination, as horrible as that may be. You've got to show that he has fear that he's going to be tortured or treated in an inhumane manner. And I don't get where phone calls from the police asking where he is, even if that's true, establishes a well-founded fear of future persecution. What else have you got? He's a continued Falun Gong practitioner. If he goes back, we know for a fact, based on his statement. He was not persecuted. Let me put it this way. He made no allegation about the past persecution that carries forward. So what do you have showing that Falun Gong today, today in China, is going to result in torture? In torture, we don't know. I don't think we may. Or persecution at little less than torture. Little less than torture. Well, submitted in the record is the, as I mentioned, the State Department report, where the State Department of State recognizes Falun Gong is indeed something that people do get persecuted for, whether it's torture. If they're leaders of Falun Gong and they're viewed as being a threat to civil order, that's right. Regular members, there's nothing in that State Department report, is there, that shows they're going to be persecuted? I believe people who are, quote, unquote, not leaders do experience persecution. Can you cite me anywhere in the record to that? Let's see. That's Administrative Record 376, and it's quoted in the opening brief. Okay, so if we accept that it's true, how has Mr. Pong shown, I mean, you have to show an individualized here. Yes. And in this case, there's nothing in the record to indicate that Mr. Pong would continue to practice Falun Gong if he returned to China. But I would also say there's nothing stating that he wouldn't, because he has continued his practice ever since he's been here in the record. He practiced in Alhambra, and there's plenty of Falun Gong practitioners in the Chinese community. Right, but there's no indication that he would be willing to continue to practice it in China, knowing that it's not permitted. And that's part of the showing. That's part of his burden to show that he would continue to practice Falun Gong and therefore be subject to persecution as part of his individualized showing. I understand your question, Your Honor, but I believe in testimony he said he's going to continue to practice Falun Gong. Where? Let me look. Your Honor, is it possible if I wanted to? You can do it on rebuttal. So I can save the time? Okay, all right. Okay. You want to say there may need to be time for rebuttal? Yes, thank you very much. All right, thank you. I'll go find that for you. Thank you. May it please the Court. My name is Lance Gell and I represent the Respondent, the Attorney General of the United States. The main issue before this Court is whether the record compels the conclusion that the petitioner has a well-founded fear of persecution where he didn't practice Falun Gong for about a year before coming to the United States. He came to the United States via a government-approved student exchange program. He has not presented any evidence to the agency that he will practice on return to China, and he has not presented any specific evidence that the Chinese government seeks to harm him. Counsel, I do have some questions about those facts, but tell us about the application or non-application of Chao v. Mukasey. Chao, or Zhao, with the 28-J letter. It depends on how narrow or broad you read Zhao. In Zhao, the petitioner avoided official channels in leaving China, but also the safety of the friends in Zhao was not sufficient where there was no evidence that they continued to practice Falun Gong in China. Now, that's, I guess, the specific area that I have questions about the facts. He testified, apparently, that he stopped practicing for a short period after the government prohibited, quote-unquote, the Chinese government banned the practice, and so he stopped practicing for a while. But he was arrested even after he stopped practicing. That's not my understanding. He was arrested on July 28, 1999, about 10 minutes after arriving at his house for a nightly practice session. Okay. Well, yeah, he practiced. And from February 98 is when he started. And he practiced until July 21, 1999, out in public. Right. And then July 22 is when the Chinese banned the practice. So if a person stops practicing because of fear of persecution, does that mean they're no longer a practitioner? Well, in this case, there's no evidence that he stopped because of fear of persecution. He stopped practicing in public by implication because the Chinese government told him to do so. And so then he started practicing at his uncle's house. And he did that from July 23 to July 28. And what's the standard response these days of the VIA to Falun Gong participants' requests for asylum? Does it vary depending on what area of China they come from? Or is it normally refusal to grant asylum? Or is it normally a granting? A lot of it is, well, I can't speak, I don't have the full, I don't know how many Falun Gong claims there are. We don't either, but I assume you're involved. I can certainly inquire about it. But I know from my own experience, it's largely based on the context. There's little, I haven't read a decision where it's narrowed based on a province. Nothing like that. Right. Nothing like he's in Fujian province, therefore. Does the VIA, however, accept commonly that Falun Gong is a basis for persecution in China? The board accepts Falun Gong as a ground to be awarded asylum, yes. Depending on the facts. Depending on the facts, depending on the context of which the case is brought before it. So does it turn here on whether Peng is a continuing practitioner? Or does it turn on the level of persecution he received before he left? It seems from the agency's decisions that it turns on the continuing, it doesn't, there's no basis there. As far as I've read the decisions, it doesn't seem like it's a rise to the level of persecution of Falun Gong. There are cases that that may be. The VIA found here that Peng's 15-day detention and mistreatment did not rise to the level of persecution. So the basic finding here of the VIA is that the persecution. He didn't raise it. He didn't raise that claim. And so. Past persecution is not in play. Past persecution is not in play in this case. Right. So it boils down to whether or not he sufficiently established reasonable likelihood, or whatever the word is, of future persecution. Right? Reasonable probability. Right. Correct. Of future persecution. So why don't you tell us why he failed to meet that burden, why we're not compelled to find to the contrary? Well, first, he has not presented any evidence that he's going to continue to practice Falun Gong when he returns to China. Because he stopped voluntarily before he left. Right. So that's a fair inference that he wouldn't practice when he returns. And there's even, though the Chinese authorities sought him out initially by calling his parents, once they found out that he was here in the United States legally, there's no evidence that they continued searching for him or continued inquiring on him. There's no evidence that they mandated him to report, to return and report. There's simply no evidence that the Chinese government is interested in harming Mr. Peng. His government-sanctioned exchange program here as a student occurred after the alleged past persecution, right? Correct. So I guess I'm having trouble seeing where the government's really going after him big time, because they allowed him to come to the United States. They must have known about this. At least we have to assume they knew about it. It's even a government-approved program. So it's not like he slipped through the cracks on a tourist visa or something like that. But it's a government-approved program, and there's just no evidence that the government remains interested in him. How was the petitioner when he received his exchange program participation? I'm not sure I understand. Is he a young man? Is he a teenager? At the time of the immigration proceedings, he was 24, so it seems he was- At the time he was approved for the- It seems like he-I'm guessing around 18. Because in 2004 is when he was 24, and I think he came in 2000, so 20, yeah, 20 years old. So what's your response to opposing counsel's argument that the board used the wrong standard in determining whether or not there's a reasonable probability of future persecution? This Court evaluates it for substantial evidence, whether he has a well-founded fear of future persecution. So, but if-I mean, his argument is the board used too high a standard. You know, they didn't use the 10 percent or whatever he's arguing should have applied. Would that be an issue of law? Well- Do we know in the record what standard the board used? The board does not explicitly-the board just-the board states that it agreed with IJ's conclusion that petitioner failed to meet the well-founded fear. So it didn't say what percentage was required or- Right. And so by presumption of regularity, we must presume that the board applied the correct legal standard. Let me summarize in two or three sentences the items against him. Okay. Rather, in his favor, that he presented and ask you why that doesn't meet the standard. He was released in August of 99 after 15 days in jail. After he was released, his parents paid on his behalf a 5,000 renminbi fine, a monetary fine. The school authorities vouched that he was a good student, but he was placed under behavioral supervision at the school to monitor his Falun Gong activities, and he received an administrative warning. Paying school was required to report his behavior to the police by telephone. He attended school under these conditions until July of 2000 when he got his visa. And then finally, his parents warned him-he's over here-and his parents warned him that if he returned to China, he, quote, would possibly face another arrest and urged him to try best not to go back to China. Does that not equal a substantial evidential showing of a properly supported belief or fear of persecution? Under the Ninth Circuit standards. Well, under-well, the prasad, 15-day detention, and the harassment that he suffered does not rise to the level of persecution. I mean, that's really the point, is it not, that all of these things are unfortunate? This isn't persecution under our case law. Correct. And besides the fact that he didn't exhaust the past persecution issues and all that kind of stuff, yeah. If the Court has no other questions for me, the respondent states that the Court should deny the petition for review. All right. Thank you, Counsel. Thank you. Rebuttal. Your Honor, I'm still looking for the point in here. And it may not be, and it may be just when you look at this. It's a very important point. Yes. So it would appear to me that you would have had that right at your fingertips when you came here. Yes, Your Honor. And I thought I saw it, but. Counsel, I'm interested, just following up on what we talked about with the government's counsel, if you take the totality of what he said, why is it persecution? Why is it persecution? Can you cite any of our cases where we have found what he alleged to be persecution is, in fact, persecution? There's no cases in the brief, but I think it's just really factually driven. We get these cases all the time. I understand, Your Honor. We get all kinds of cases involving various and sundry things, and certainly lots of felon-gone cases. And I can think of some really horrendous ones with respect to leaders where their feet and their kicks and their skin is battered with scratching devices and their parents are beat up and their money is robbed and things like that. This is basically, at the time, was a teenager. And the government wants to be sure he doesn't get too far off the track here, and they counsel his parents and don't do that again. That's unfortunate. But it's not persecution. So I'm asking you, am I mistaken? Is there a case that says that what happened here is persecution? I do not know off the top of my head, but I think it's just a shame that we have to. Isn't that fatal to your case? I don't think so. I'd like to clarify a point with the J-1 visa that you brought up. And government actually cites in here, you know, he was given the opportunity to leave, and that doesn't compel a finding of future persecution. But here, the fact was his family bailed him out. His uncle was the principal at the school, and he went out and said, I'm going to cover for this guy, I'm going to watch his behavior. Turn him over to me. Please release him. That's how he got out, okay? And that's how he got, it's not easy getting a passport and a visa in China, and the government keeps on harping, why did it take him so long? Well, what's the alternative? Should he go get smuggled over here? But the fact is he got a government-sponsored visa. Sure. And this is 1998, and I'm thinking, I don't, it's a passport agency, it's police. I mean, it's the school saying, here's our group of people on this J-1 program we want to send over. We don't necessarily know the circumstance. It wasn't winning. They didn't go into it in the underlying case regarding it. What's the difference between this and, say, a young person of color in Pasadena that gets in the wrong crowd and a police sergeant that knows the family calls him up and says, you know, Mom, you've got to watch out. Your boy's hanging around with the wrong people. But I'll tell you what we're going to do. We're going to help him get into USC on a scholarship. Is that persecution? In that situation, I don't see how it's quite, I don't think so. But my point, it's just a shame that Mr. Pong has to go back and stop doing what he likes to practice. Well, the United States should be different. That's when it's not the United States, it's the Republic of China. They have their own set of rules. But what we're governed by here is U.S. law that requires us to find persecution. And our cases have repeatedly made clear that although discrimination, violations of what we would consider First Amendment rights and so on are really unfortunate, and indeed deplorable in many circumstances, that's not persecution. So what I've asked you for is case law that shows that these facts constitute persecution, and you've told me that you don't know of any. Not off the top of my head, Your Honor. No, if you want to give me additional time to brief, which I don't think so, then I would be more than happy to look, but I don't think that's going to happen. Well, we assume that you looked for your strongest cases when you filed your brief. Well, sure, Your Honor, but I'm coming in kind of out of the bullpen here. So I'm taking what I got here. And, yeah, I might have done a different strategy here, but I'm taking what I got. So if there's no further questions, then I appreciate your time. Thank you. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the court. That concludes our calendar for the day, and we are on recess until 9 a.m. tomorrow morning. All rise. This court stands adjourned. I'm not sure why they did this. You know why they came up with this? Yeah, no, but congrats. Thanks.
judges: Jones, Rawlinson, Smith M.